## Porter v. Meade.

(Decided Oct. 20, 1933.)

A. F. CHILDERS and H. R. BURKE for appellant.
EDWARD L. ALLEN for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

There were three candidates for the Democratic nomination for the office of county court clerk in Floyd county. Banner Meade received 3,785 votes; Henry Porter received 1,919 votes. The votes of Earl Howard are not given, but it is stated that he received fewer votes than the others. In due time Porter filed his petition contesting the nomination of Meade. He was unsuccessful in the trial court, and has appealed.

The basis of this contest is the allegation that a slate was made up, and that one of the candidates for circuit judge, one of the candidates for commonwealth attorney, one of the candidates for circuit court clerk, one of the candidates for county judge, one of the candidates for county court clerk, one of the candidates for sheriff, and one of the candidates for tax commissioner were members of this slate, and that a large sum of money was raised and pooled for the purpose of corrupting the voters and securing the nomination of the various members of this slate, and that a majority of the members of the slate were successful.

The record shows that $25,000 or more was raised, pooled, and used in part for the purpose of corrupting the voters. This money was distributed among certain men referred to as "strikers," which is a local name for vote buyers. There is proof here that quite a bit of this money was actually used for buying votes, but there is still a large balance, which probably remained in the pockets of the strikers.

Porter had, in addition to the things set out above, to establish that Banner Meade was a member of this slate; in this he was successful. He had, besides establishing that, to prove Banner Meade contributed or consented that others should contribute to this fund that went into the hands of the strikers and some portion of which finally reached the voters whom they struck; in that he failed. The most that he succeeded in showing was that Banner Meade attended a meeting at a place called Harkins' camp about a week or so before the

election, at which place, about the hour of midnight, the scheme was discussed. The candidates, all except Meade agreed it was a good thing, and they were anxious to get in, but each one of them seemed to want the others to do the putting up of the money. Porter never succeeded in showing that Meade put up any money or consented to it. Meade was present at another meeting at which an effort was made to get Riley Hall to withdraw from the race for sheriff, and, if he withdrew, then of course he and the one regarded as his leading adversary, to wit, Taylor Stumbo, could draw down their antes. Hall did not withdraw. Of course, when these antes, aggregating, so it is claimed, something like $8,000, were taken down, that would diminish the exchequer of the pool and weaken the financial strength of the slate; hence it looks quite suspicious that Banner Meade and the other members of the slate were invited to and did attend this meeting. It looks as though they were affected thereby. Still Meade was county court clerk. It was his duty to prepare the ballots for use in this primary election, and he gives as his reason for attending the meeting that it would become his duty, as county court clerk, to remove Mr. Hall's name from the ballots if he withdrew, and that he attended for that purpose. Of course, Mr. Meade was anxious to get all the votes he could, from every source he could, and, as he says, by every legitimate means, but not otherwise. A suspicious circumstance is that, when Meade endeavored to get Porter to agree not to contest, and when Porter sought to get Meade to agree not to use any money, Meade should answer, 'I am going out to win." That was at the most only a threat to use money, and Porter was unable to put his finger upon any satisfactory evidence that this threat was carried into execution.

The judgment is affirmed.